## COLVARD v. GOODWIN et al.
### No. 656.

Court of Civil Appeals of Texas. Eastland.
Jan. 24, 1930.
Rehearing Denied Feb. 21, 1930.

Ritchie & Ritchie and J. T. Ranspot, all of Mineral Wells, for plaintiff in error.

W. J. Oxford, of Stephenville, and J. A. Johnson, of Big Spring, for defendants in error.

HICKMAN, C. J. Mrs. S. A. Goodwin, a widow, and Frank Goodwin, her son, institut-

ed this suit against C. P. Colvard and First National Bank of Gordon for the purpose of canceling certain deeds and other instruments relating to the community estate of Mrs. S. A. Goodwin and her husband, J. Goodwin, deceased. The petition upon which they went to trial is long, but a summary thereof will be given.

They allege: That, on the 3d day of January, 1927, the plaintiff, Mrs. S. A. Goodwin, and J. Goodwin were husband and wife, and were joint owners of 180 acres of land situated in Palo Pinto county. That the tract of land and all other property belonging to J. Goodwin and wife, S. A. Goodwin, was community property. That J. Goodwin is dead and Frank Goodwin is his sole and only heir. That on January 3, 1927, J. Goodwin was over 80 years of age, and was feeble in body and mind; that he had been confined to his bed many weeks prior thereto, suffering from an incurable malady; that his hearing and eyesight were greatly impaired; that by reason of his condition it became necessary that he receive constant attention. That soon after J. Goodwin became confined to his bed from a malady which resulted in his death, the defendant Colvard pretended great friendship for him, and, without solicitation and under the guise of being a neighbor and friend, tendered his services as a nurse, and did, in fact, nurse and attend upon J. Goodwin, and, for 15 days immediately preceding the death of Goodwin, supplied his every need by day and night. That Colvard refused to permit the other neighbors of Goodwin to assist him in any way, but notified them that their services and presence were not needed. The petition charges that the pretended acts of kindness and friendship were prompted by the improper motive of furthering a scheme and design to procure title and possession of all of the property of Goodwin and his wife and son. That a few days prior to January 3, 1927, Colvard began to entreat Mrs. Goodwin to induce her husband to make a will, telling her that the will would be for the protection of herself and her afflicted and weak-minded son, Frank, and that he also began talking to J. Goodwin, entreating him to make a will. That he continued importuning Goodwin and wife day after day and hour after hour until they finally consented to do so. That Goodwin and wife were persuaded by Colvard to agree to will all of their property to their afflicted son, Frank, and to make Colvard executor. That their final agreement to do so was made on January 3, 1927, and that on that date, in the nighttime, Colvard, after a short absence from the Goodwin home, returned with a notary public and represented that the paper which he had was the will which they had been discussing; whereupon J. Goodwin and his wife both executed and acknowledged the same, believing it to be a will. Plaintiffs further charge that the instrument was not a will, but was, in fact, a warranty deed, conveying to Colvard, for a recited consideration of $1, 180 acres of land, known as the "lower place." That the $1 consideration therein recited was not paid, and no consideration whatever passed to the grantors for said deed. The petition contains many allegations of the mental incapacity of each of the grantors and of fraud through undue influence practiced upon them by Colvard. It is not necessary to detail the substance of these many allegations. The value of the land conveyed by this deed was alleged at $8,000. Eleven days after the execution of this deed, and on January 14th, J. Goodwin died, having been kept in bed continuously from the execution of the deed to his death. That no administration was pending on his estate, and there was no necessity therefor.

The petition next charges that, on the 15th or 16th of January thereafter, Mrs. S. A. Goodwin and her son, Frank, each of whom owned a one-half undivided interest in the community estate of J. Goodwin and wife, S. A. Goodwin, conveyed to Colvard 270 acres of land, known as the "home place." The allegations are that this deed was executed under the following circumstances: Colvard came to them and represented that he was the executor of the will of J. Goodwin, and, as such executor, was to have control, management, and disposition of all of the property; that it was his duty as executor to take care of Mrs. Goodwin and her son during their natural lives, and requested them to ratify said will and his authority thereunder by signing an instrument, which he represented to them to be a confirmation of the wishes and will of J. Goodwin. That they relied upon these representations and executed and delivered the instrument to Colvard, which was, in fact, a deed to the "home place." (Departing from the allegations of the petition, for the sake of clearness we will state that this deed, which the facts show was dated January 17th, while signed and acknowledged by the grantors and also signed by two witnesses at their request, is not made the basis of any claim of title by plaintiff in error Colvard. The notary public never made his certificate to the acknowledgment, and a deed of date January 21st hereinafter described conveying the same property is the one relied on.)

The petition then alleges that, on the 21st day of January, 1927, Colvard presented to plaintiffs three additional instruments, one of which was in the nature of a power of attorney, authorizing Colvard to handle and manage the estate of J. Goodwin, deceased, and of the plaintiffs. Another of these instruments was alleged to be a warranty deed conveying to Colvard the 270-acre tract above mentioned, known as the "home place"; this deed having been represented by Colvard to be a ratification of the will of J. Goodwin, of which he represented himself to be executor.

The other instrument was described in the petition as "a ratification agreement of all the acts and things that the said defendant C. P. Colvard has theretofore induced these plaintiffs to do and to sign." Allegations were made that all of these instruments were in the possession of the defendant, and he was notified to produce them on the trial.

The petition then at length makes allegations of the mental incapacity of Mrs. S. A. Goodwin and Frank Goodwin, and of the fraud alleged to have been practiced upon them by Colvard to induce them to execute all of the various instruments. The petition further alleges that thereafter, on the 31st day of January, Colvard induced and procured them to sign an order to the First National Bank of Gordon, empowering him to draw checks on funds of J. Goodwin, deceased, and Mrs. S. A. Goodwin, to be used in settlement of the expenses necessary in the winding up of the estate of J. Goodwin, deceased.

For cause of action against the First National Bank of Gordon, the petition alleged that it had in its possession on deposit $4,000 belonging to the estate of J. Goodwin and S. A. Goodwin, and also a box containing Liberty bonds of the value of several thousand dollars, and that the bank was refusing to honor the checks of plaintiffs drawn against said deposit. It was charged that the bank was claiming the right to pay out the funds to Colvard under the fraudulent document procured from plaintiffs, and that the cashier of the bank was present at the time the document was received from the plaintiffs, and had knowledge of the fact that same was not based upon any consideration, but was obtained through fraud. The prayer was for cancellation of each and all of the several instruments executed by the plaintiffs and by J. Goodwin and S. A. Goodwin to Colvard and for the perpetuation of a temporary injunction theretofore issued. Personal judgment was sought against Colvard for various sums which were alleged to have been improperly spent by him. Judgment was sought against the bank on account of the property in its possession belonging to the plaintiffs.

The case was submitted to the jury on eight special issues. Special Issue No. 1 called on the jury to answer whether or not J. Goodwin was, on January 3, 1927, for any cause, wanting in mental capacity to such a degree that he did not know the nature, result, effect, and consequence of his act in executing the deed of that date. The second special issue made the same inquiry with reference to Mrs. S. A. Goodwin. The third issue made the same inquiry as to the mental state of Mrs. Goodwin on the 21st day of January, 1927, the day on which certain instruments were executed as above described. The fourth special issue makes the same inquiry concerning Frank Goodwin. The fifth special issue called on the jury to determine whether Colvard falsely represented to J. Goodwin and wife that the deed of January 3, 1927, was a will. The sixth special issue called for a finding as to whether J. Goodwin and S. A. Goodwin believed said representation and signed the instrument under such belief. The seventh issue submitted the question of whether Colvard obtained the signatures of Frank Goodwin and Mrs. S. A. Goodwin to the instruments dated January 21st, by falsely representing to them that these papers were necessary to enable him, as executor, to carry out the will of J. Goodwin, deceased. Issue No. 8 submitted the question of whether Colvard exercised undue influence upon J. Goodwin which caused the execution and delivery of the deed of January 3d. All of these issues were answered in the affirmative, and, based upon these answers, judgment was entered as prayed for.

Fifty-three assignments of error are brought forward in the brief of plaintiff in error and 25 propositions of law based thereon. To discuss fully all of the propositions would unduly lengthen the opinion, but we shall endeavor to indicate the reasons for our holdings on each question of law presented.

■■ The trial court did not err in overruling the plea in abatement based upon a misjoinder of parties plaintiff and causes of action. In our opinion both of the plaintiffs were not only proper parties, but were necessary parties to the suit. Our views on this question may be found in Hardin v. Hardin, 1 S.W.(2d) 708, and the authorities there cited. The policy of our law being to avoid a multiplicity of suits, it was not necessary that separate suits be filed to cancel the several instruments executed by defendants in error, and there was no misjoinder of causes of action.

■ No prejudicial error resulted from the action of the trial court in overruling the special exception of plaintiff in error to the petition of defendants in error for want of a verification thereof. The petition did charge a failure of consideration for the instruments, but such allegations were not, and could not in law be made, a ground for cancellation of the deed of January 3d. It was absolute on its face, and could not be canceled for failure of consideration. These allegations were but parts of the grounds of fraud and mental incapacity relied upon. No issue of failure of consideration, as a separate issue, was submitted to the jury, and no claim was made that Colvard had breached any condition precedent contained in the deed of January 21st. The grounds submitted to the jury, and upon which cancellation was decreed, were not grounds the pleading of which must be verified.

■■ By special exceptions the plaintiff in error excepted to all of the petition upon

which the case was tried, other than the parts containing formal descriptions of the property involved and other merely formal allegations, on the ground that it did not plead facts in a proper and concise manner, but that the pleading was prolix, containing conclusions and arguments of the pleader, and abusive and inflammatory allegations, which were improper and not necessary to a proper pleading of the issues, calculated and intended to influence the minds of the jury and prejudice them against plaintiff in error, and excite their sympathy and compassion in behalf of defendants in error. It was, therefore, prayed that all such allegations should be stricken and the plaintiffs ordered to replead.

We have read the petition, and find that it is a very vigorous presentation of the theories relied upon to explain the apparent friendship of Colvard to this family. It abounds in allegations ascribing to Colvard improper and wicked motives and charging that his friendship was feigned. It also graphically portrays the different elements and causes contributing to the gullibility and mental incapacity of the plaintiffs below, but we are not prepared to hold that is so violated the rules of pleading as that it should have been stricken from the record. Great latitude must necessarily be allowed the pleader in a case of this character. The acts of Colvard in waiting upon and attending to J. Goodwin during his sickness on their face indicated unselfishness and commendable neighborliness. The theory of plaintiffs' case of fraud through undue influence was that, in fact, his acts were prompted by a very selfish desire and purpose. Vigorous language is not improperly employed in making such allegations. With reference to the allegations concerning the mental incapacity of Goodwin and his wife, a number of facts were pleaded showing their surroundings and circumstances. These allegations were made necessary on the theory of mental incapacity, because it was the claim that these parties were not mentally incapacitated at all times, but that circumstances there described produced a state of incapacity. We considered a similar question in the case of Ferguson v. Ferguson, 11 S.W.(2d) 214, in which we overruled a like contention. The writ of error granted in that case was upon another point.

The trial court did not err in permitting defendants in error to introduce in evidence the deed dated January 17, 1927, executed by Mrs. S. A. Goodwin and Frank Goodwin to Colvard. While, as contended by plaintiff in error, the deed bore no certificate and no file marks and the answer set up that no claim was made thereunder, it having been superseded by the one of January 21st, still it was properly admitted in evidence as a circumstance bearing on the main issues in the case. It was also important that such instrument be canceled. It had, in fact, been

signed and acknowledged, and there was evidence of its being in the possession of the vendee or his agents.

Upon the trial the court permitted defendants in error to prove by the witness Deaton that, about a week or 10 days after the execution by defendants in error of the instruments in question, he saw Colvard, and that Colvard told him that "everything was working smooth." Plaintiff in error objected to the introduction of this evidence, for the reason that the conversation, being long subsequent to the execution of the instruments, could not throw any light on the execution thereof, and was too remote and prejudicial. Error is assigned to the action of the court in overruling this objection. We think the objection goes to the weight and not to the admissibility of the statement. It was for the jury to say whether this expression tended to support the allegations of a preconceived design and scheme on the part of Colvard.

Bill of Exceptions No. 3 presents a question that can best be understood by copying the bill, with its qualification by the trial judge. It is as follows:

"Be it remembered that on the trial of the above entitled and numbered cause, during the direct examination of plaintiffs' witness, J. L. Deaton, the following proceedings were had, to-wit:

"The said witness was permitted to, and did, testify over objection of defendant, in substance, that a short time after the execution of the instruments, cancellation of which is sought in this suit, witness visited Mrs. S. A. Goodwin; that when witness went to her home, that she was almost crazy, that she was mumbling and crying part of the time; that she had a broom and stood and swept in the same place and talked; that she told witness that Charlie, meaning appellant, had beat her out of everything on earth she had; that witness told her he did not think Charlie would beat her out of anything and would give her the stuff back and that she said she did not believe he would; that witness promised her that he would see Charlie and did; that witness talked to her a good long while, about three-quarters of an hour and that she kept talking until witness got out of her hearing.

"Which testimony defendant objected, on the ground that same was an ex parte conversation between the witness and plaintiff, Mrs. S. A. Goodwin, and when defendant was not present, was subsequent to the execution of the instruments in question, was immaterial and irrelevant and was prejudicial.

"Which objections were overruled by the Court and the witness was permitted to, and did testify, in substance, as above set out. Whereupon counsel for defendant excepted to the ruling of the Court and herewith tenders

his bill of exception No. 3, and asks that same be signed as a part of the record in this cause.

"Which is accordingly done this 20th day of July, 1929.

"Bill of Exception No. 3 is approved with the explanation that the condition of Mrs. Goodwin's mind at the time she executed the instrument, cancellation of which is sought in this suit, was a material inquiry, and the evidence was admitted on that issue, the conduct having taken place a very short time after she executed said instruments. No request was made to limit the evidence in the charge."

It is disclosed in the statement of facts that at the time of this conversation the witness Deaton was representing Colvard at his request and had gone to the home of Mrs. Goodwin to talk to her in Colvard's behalf, to reassure her that Colvard was not dealing unfairly with her. Part of this was clearly admissible, and the objection goes to the whole. With this situation in mind we think the bill, as qualified, presents no reversible error.

▮ On the question of the mental capacity of the Goodwins, various nonexpert witnesses were permitted by the court, over the objection of plaintiff in error, to express their opinions. The objection urged in each case was that the witness had not detailed sufficient facts to show his qualification to express his opinion. The record contains many bills of exceptions preserving this question. We have given consideration to each individual bill of exceptions and regard the objections as being without merit. In each instance the witness did detail some facts, and we are not prepared to state that the facts detailed were insufficient in any instance as the basis of the opinion. No rule can be made to serve as a guide to a trial court on a question of just what facts are sufficient to warrant a nonexpert to give an opinion on a question of mental soundness further than the general rule that the facts testified to must reasonably tend to show mental unsoundness, and must be such as will enable a witness to arrive at an intelligent opinion with respect to the subject. We think the facts testified to by the several witnesses in this case met the general rule, and the assignments presenting this question are overruled.

▮ Objection was made and exception taken to the action of the trial court in permitting Frank Goodwin, a witness in his own behalf, to testify, after having admitted his signature to certain instruments introduced in evidence, and having testified that such instruments were read over to him at the time of their execution, that he did not know what the instruments meant; that he did not know anything about a power of attorney. The reason why this testimony was claimed to have been incompetent was that the witness could not, by such testimony, impeach the instruments which he had executed. No authority is cited in support of this contention, and we are not impressed by it. We know of no rule denying the right to interrogate the witness in this manner. In our opinion it was a proper way to test his capacity before the jury. The general rule against impeaching one's own instruments is not applicable. The issue was mental capacity, and, if this character of examination shed any light on that issue, which, to our minds, it did, we regard it as proper evidence.

▮ The relationship of plaintiff in error to the bank and its president, and the fact that he was indebted to the bank in a large amount, which had been charged off by the bank, were proper subjects of inquiry on cross-examination of an officer of the bank, who testified as a witness for plaintiff in error. The bank was a party to the suit. Its cashier, the witness, was the notary who took the acknowledgments to the deeds and other instruments attacked in the suit. Under these facts the evidence was proper both on the general issue of design and as bearing upon the interest of the witness in the controversy.

▮ Propositions 16 and 17 present this question: Plaintiff in error, as a witness in his own behalf, was prevented, by objections urged by defendants in error, from testifying to an oral contract he had with the deceased, J. Goodwin, and to transactions with J. Goodwin during his lifetime. The contract to which he would have testified was that J. Goodwin would either devise to Colvard at his death the farm known as the "lower place," or that he and his wife, S. A. Goodwin, would convey to Colvard said property while living. This in consideration of certain services rendered in the nature of improving this property, and assisting Goodwin and wife in looking after their affairs. The witness was permitted to testify as to his actual work and expenditures in improving the farm, but not as to his conversations and agreement with Goodwin, nor as to his transactions with him. This testimony was excluded under the provisions of article 3716, R. S. 1925, known as the "dead man" statute. This statute reads as follows:

"In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

As above stated, all of the property in litigation was the community property of J. Goodwin and S. A. Goodwin. The one-half

interest owned by Frank Goodwin at the time of the suit came to him as an heir of his father. The other one-half interest was owned by his mother in her own right, and not as an heir. Under this state of facts, as a general rule, evidence of transactions with the deceased offered against a widow and child generally should have been admitted by the court and limited in its effect so as not to affect the rights of the heir. Harris v. Warlick (Tex. Civ. App.) 42 S. W. 356; Field v. Field, 39 Tex. Civ. App. 1, 87 S. W. 726, 727; Wilmurth v. Tompkins, 22 Tex. Civ. App. 87, 53 S.W. 833.

In the case of Evans v. Scott (Tex. Civ. App.) 97 S.W. 116, it was held that the duty rested upon the parties in whose behalf the evidence was offered to request that its effect be limited by the court, while in the other cited cases it was held that the duty did not rest upon the party offering the testimony to request its limitation. If those decisions are to be harmonized, it seems that the rule might be different in a case where the evidence is offered by the widow and children from that in a case where it is offered against them. But we do not undertake to announce any rule with reference thereto, as we regard the entire question, so far as it affects the case before us, as being governed by the decision of our Supreme Court in the case of Spencer v. Schell, 107 Tex. 44, 173 S. W. 867.

In the opinion in that case Mr. Justice Phillips states that the rule announced in the cases above cited would apply in a suit for the recovery of distinct and severable interests, so that the testimony could be limited and applied to the interest against which it was properly admissible. But, the evidence would be inadmissible in a case in which, as a practical proposition, the effect of the testimony is incapable of limitation. Applying the reasoning employed in that case to the facts in the instant case, the conclusion is reached that the effect of the testimony was incapable of limitation. If the result of admitting this testimony would be to affect the judgment which might be rendered as to the heir, Frank Goodwin, it was properly excluded. This testimony related only to the deed executed by J. Goodwin and his wife during his lifetime. It could not be upheld so far as Mrs. Goodwin's interest was concerned and canceled as to Frank Goodwin's interest. The deed either conveyed all of this tract of land or it conveyed nothing. The property was community and was not a homestead. Mrs. Goodwin's signature was not essential to its validity. No effect could have been given this testimony without affecting the judgment as to Frank Goodwin. It could not, therefore, be limited by an instruction of the court, and no error was committed by its exclusion.

But, should we be in error in the above ruling, the case should not be reversed on account of the exclusion of this testimony. The petition in error and writ of error bond filed by the plaintiff in error in this case disclose that Mrs. S. A. Goodwin has died since this case was tried, and that Frank Goodwin alone is the owner of all this property. The proffered testimony related only to the deed of January 3d, executed by J. Goodwin and wife. Upon another trial of this case, with Frank Goodwin as the sole plaintiff, the evidence would clearly not be admissible under the ruling of our Supreme Court in the case of Spencer v. Schell, supra, and we would not be authorized to reverse this judgment and remand this case for another trial for the purpose of permitting plaintiff in error to offer evidence which would then be clearly inadmissible.

Complaint is made at the action of the trial court in refusing to give in charge to the jury a special requested charge prepared by plaintiff in error, in which it was sought to have the court construe the provisions of the deed dated January 21, 1927. No reason is perceived why the jury should have been given this instruction. No issue was submitted to the jury involving the construction of the deed, and the requested instruction was not an explanation of any legal term used in the court's charge. The assignments presenting this question are overruled.

Objection is made to the court's charge on the burden of proof. As noted, eight special issues were submitted to the jury, after which was this instruction:

"Affirmative answer to any question submitted to you herein must result from a preponderance of the evidence. Otherwise the answer must be in the negative."

The objection urged was that the charge was ambiguous and confusing to the jury, and did not clearly charge the jury as to the party upon whom rested the burden of proof. In a case tried on special issues it is not important for the jurors to know upon which party rests the burden of proof. It is only important that they know how their answers should be affected by a preponderance of the evidence. The issues as submitted in this case made no reference to the preponderance of the evidence. Some charge upon the burden of proof was therefore proper. We do not believe the charge given was bad as against the objections urged thereto. Wootton v. Jones (Tex. Civ. App.) 286 S. W. 688; St. Louis Southwestern R. Co. of Texas v. Preston (Tex. Com. App.) 228 S. W. 928, 932; Davis v. Morrison (Tex. Civ. App.) 14 S. W.(2d) 296, and authorities there cited.

In his charge the court defined "undue influence" as follows:

" 'Undue influence' is any fraudulent or designing means employed upon and with the maker of a deed or instrument by which, under the circumstances and conditions by which such maker was surrounded, he could not well resist and which controlled his volition and induced him to do that which otherwise he would not have done."

Plaintiff in error excepted to this definition on two grounds: (1) Because same is ambiguous and confusing, and does not clearly define to the jury what would or would not constitute undue influence, and (2) the term "designing" as used in the definition is misleading and confusing and does not instruct the jury what character of design would constitute undue influence. The first objection is clearly too general to point out specifically any defect in the definition. The second objection, we think, is without merit. It was not important that the jury be informed as to the particular character of "design" which would have the effect of controlling the volition of the grantor and inducing him to do that which he otherwise would not have done. This proposition is overruled.

▉ Objection was made to the argument of Hon. J. A. Johnson, one of the attorneys for defendants in error, in his opening address to the jury. Copious extracts from this address are contained in the brief. It was a vigorous and somewhat severe arraignment of plaintiff in error and some of his witnesses, particularly Buster Thompson. From the viewpoint of his clients, however, and the theory upon which the case was tried, we cannot say that the charges contained in the address were not permissible deductions from the evidence. This is not a case in which counsel supplemented the facts and brought before the jury matters not testified to on the witness stand, but it is a case where a lot of facts and circumstances warrant different conclusions and deductions, and the attorney was very strongly presenting the deductions which to his mind the facts warranted. The case of Bell v. Blackwell (Tex. Com. App.) 283 S. W. 765, applying the reasonable doubt rule to arguments of counsel, must be read and applied, in determining the question presented in this case, in the light of the opinion by the same member of the Commission in the case of Davis v. Hill, 298 S. W. 526.

We find no reversible error in the record, and the judgment of the trial court will therefore be affirmed.

### On Rehearing.

▉ We think one contention in the motion for rehearing makes it desirable that we write this statement on rehearing. It is contended that we erred in the original opinion in connection with our discussion of the action of the trial court in excluding the prof-

fered testimony of the appellant, as to his personal services to, and contract with, J. Goodwin, in stating that this testimony related only to the deed executed by J. Goodwin and wife during his lifetime. It is insisted that such personal services were alleged in the pleading to be a part of the consideration for the execution both of the prior deed and of the deed executed by Mrs. Goodwin and Frank Goodwin after the death of J. Goodwin. Appellant's bill of exceptions No. 20 preserves this matter, and it is there stated that appellant would have testified that he performed these personal services for J. Goodwin in accordance with an agreement on the part of the said J. Goodwin to the effect that, if appellant did so render said services and perform said work and assist said Goodwin and wife in looking after their affairs, "said J. Goodwin would either devise at his death to defendant the farm known as the lower place, or said parties would convey to the defendant said property while living." The bill of exceptions does not show that the witness would have testified that the services were rendered under any agreement in any manner affecting or concerning the title to the home place, which was deeded after the death of J. Goodwin.

We therefore think our conclusion as expressed in the original opinion that this proffered testimony related only to the deed to the lower place made during J. Goodwin's lifetime is not subject to the criticism made thereof.

We have considered the motion for rehearing, and the same is overruled.