JONES–O'BRIEN, Inc., v. LOYD et al.

No. 1872.

Court of Civil Appeals of Texas. Eastland.

Feb. 3, 1939.

Rehearing Denied March 3, 1939.

Abney & Caven, of Marshall, for appellant.

Wynne & Wynne and Bramlette & Levy, all of Longview, and Turner, Seaberry & Springer, of Eastland, for appellees.

FUNDERBURK, Justice.

The suit is an action in trespass to try title to 3.07 acres of land in Gregg County. The plaintiffs were the surviving wife and children of John Loyd, deceased, Irene Loyd, the surviving wife asserting title in herself individually, to an undivided one half interest, and as guardian for those of the children who were minors to other undivided interests. The defendants were Jones-O'Brien, Inc. and others. The 3.07 acre tract was described thus:

"Beginning at a point which in 1909 was the northwest corner of Mrs. Sallie Hughey 204-acre tract in the L.B. Outlaw Survey No. 243, corner in public road 1258.6 varas west of the N.E. corner of the square L.B. Outlaw Survey No. 243, as witnessed by a P.O. tree bearing South 5 deg. W. 6 varas;

"Thence West 1055.0 feet to the northwest corner of the John Loyd 25-acre tract out of the L.B. Outlaw Survey No. 243 and the southwest corner of this 3.07 acre tract, in the north line of the said Outlaw Survey, 251.4 varas west of the S.W. Corner of McCurry Survey and in south line of the L.B. Outlaw Survey No. 241; which point is 178 feet South of the N.W. corner of the Loyd 3.07 acre tract as now fenced.

"Thence North 178.7 feet to the northwest corner of this tract;

"Thence with fence south 85 deg. 5' E. 460.2 feet;

"Thence South 85 deg. 5' East 598.7 feet to the northeast corner of this tract, corner in the road, 517 feet west of J. M. Dickson's southwest corner;

"Thence South 88 feet to the place of beginning."

In the patent of the L.B. Outlaw Survey No. 243, issued December 20, 1847, the southeast corner of said survey was described as being located "1320 varas west and 380 varas north from the northeast corner of J. Wilkinson Survey, from which a P.O. bears North 6 varas and a Hickory 10 inches diameter bears South 65 E 4 varas." The course and distance calls from said southeast corner to the northeast corner was "Thence North at 2016 varas a post." Said post, according to the field notes, marked a corner, "from which a post oak 12 inches diameter bears South 5 W 6 varas and a red oak 16 inches diameter bears North 17 deg. E 8 varas."

The 25-acre John Loyd tract was described in a deed from Leon Smith to John Loyd, dated November 26, 1910, thus:

"Beginning at the N.W. Corner of Mrs. Sallie Hughey's land;

"Thence W. 15.81 chains to corner a stake from which a sweetgum 14 in. in diameter bears N. 70 deg. W. 8 links;

"Thence S. 15.81 chains to corner, a stake witness a double red oak;

"Thence E 15.81 chains to W. B. Line of Hughey land a stake from which a pine 14 in. in diameter bears S. 45 deg. W 14 links;

"Thence N. to place of. beginning, containing 25 acres of the L.B. Outlaw headright survey of land."

Plaintiffs' title to the land was specially pleaded to have been acquired by the ten years' statute of limitations (R.S.1925, Art. 5510.)

The defendant Jones-O'Brien, Inc. disclaimed except as to the interest shown by an oil and gas lease covering the land; demurred generally to plaintiffs' petition; pleaded a general denial and not guilty; and specially pleaded title by ten years' limitation (R.S.1925, Art. 5510).

The verdict of the jury, in response to special issues submitted, was in favor of the plaintiffs. Only Jones-O'Brien, Inc. has appealed. This is the second appeal of this case. See Jones-O'Brien, Inc. v. Loyd et al., 106 S.W.2d 1069.

We are inclined to think that the evidence was such as to raise an issue of fact

686

as to the location on the ground of the northeast corner of the 3.07 acre tract in suit, said corner being determinable by and as identical with the northwest corner of the Sallie Hughey tract of land. If so, it follows that upon that ground, the court did not err in refusing to instruct a verdict for appellant.

■ Also, we think there was no conclusive estoppel warranting appellant's motion for judgment in its favor. The call for a particular tree in a deed conveying other land to which none of the parties to the suit are either parties or privies, would not be conclusive as an estoppel, even if the identity and location of the tree were undisputed.

■■ The fact of the true location on the ground of the northwest corner of the Mrs. Sallie Hughey land in 1910, as identical with the northeast corner of the John Loyd 25-acre tract, was a fact determinative of every issue in the case, except possibly issues of limitation. This proposition is in substance and effect asserted in the briefs of all parties. The issue joined by the pleadings, to which said determinative fact related, was submitted to the jury as follows: "Do you find from a preponderance of the evidence that the northwest corner of the Sallie Bell Hughey tract of land, as said Hughey land was located on the ground in the year 1910, and as said northwest corner was called for in the John Loyd deed from Leon Smith as executed in November, 1910, was at a point 1258.6 varas west of the northeast corner of the L.B. Outlaw Survey No. 243, known as the square Outlaw Survey, as said corner was witnessed by post oak tree bearing south 5 deg. West 6 varas, which tree has now fallen down, if said tree did so witness said corner of the Outlaw Survey? Answer Yes or No."

The answer was "Yes." The statement of said special issue would in legal effect have been the same, had it been in form as follows: Assuming that the northeast corner of the L.B. Outlaw Survey No. 243, known as the square Outlaw Survey was witnessed by a post oak tree bearing south 5 deg. West 6 varas, and further assuming that the post oak tree (described in the patent issued in 1847) is the same tree which has now fallen down, was the northwest corner of the Sallie Bell Hughey tract of land, as said Hughey tract of land was located on the ground in the year 1910, and

as said northwest corner was called for in the John Loyd deed from Leon Smith, as executed in November, 1910, at a point 1258.6 varas west from said corner so marked by said fallen tree? Presumably (nothing appearing to the contrary) the northeast corner of the John Loyd 25-acre tract was the same as the northwest corner of the Sallie Bell Hughey tract. The surveyor, or other person, who prepared the description of the Loyd tract evidently thought so. Presumably, also, the northeast corner of the L.B. Outlaw Survey 243 was originally (in 1847) witnessed by a post oak 12 inches in diameter bearing south 5 W 6 varas. The field notes of the patent so described it. It may be further assumed that at a point 1258.6 varas east of a point which plaintiffs claim was the northwest corner of the Sallie Bell Hughey tract, was the point from which a post oak, then fallen down, bore south 5 deg. west 6 varas. The location on the ground of the northeast corner of the Outlaw Survey was a subject of dispute. The location on the ground of the northeast corner of the Hughey tract was disputed. That said corners were the same was not a matter conclusively established. And, of course, the location on the ground of the northwest corner of the Hughey tract was a subject of dispute. The "Yes" answer to special issue No. 1, therefore, determined no issue in the case. The finding that the northwest corner of the Sallie Bell Hughey tract was 1258.6 varas west of the northeast corner of the Outlaw Survey if a certain fallen tree was a witness of the original corner, established in 1847—a disputed fact—was simply no finding of the fact in issue. In the opinion of this court on the former appeal of this case (106 S. W.2d 1069, 1072), upon the authority of decisions therein cited, we said: "In a boundary suit, whether in form an action in trespass to try title, or not, the disputed line must be described with reference to objects about the location of which there can be no controversy; otherwise the suit will not be effective to settle the controversy." There appears to have been no subsequent amendment of plaintiffs' petition and hence the pleadings ignored this rule, by alleging that the disputed northeast corner was 1258.6 varas west of the northeast corner of an old survey, the location of which corner was in dispute, not only as shown by this record, but also as we had occasion to know in another case recently before this-

court. Atlantic Oil Prod. Co. **v.** Hughey, 107 S.W.2d 613. The corner was not described in the pleadings by reference to any object, the location of which on the ground was not the subject of dispute. The issue was required to conform to the pleadings and, therefore, in doing so, called for no finding that would certainly locate the corner with reference to objects about the location of which there could be no controversy any more than the pleadings did. It may be doubted, we think, whether the verdict upon the issue in question would support the judgment, even in the absence of any objections to the issue. But at any rate, as against the objections made, the issue should not have been submitted in such form.

■ Among the special issues submitted was the following: "Special issue No. 2. Do you find from a preponderance of the evidence, that the north line of the John Loyd 25-acre tract, as called for in his deed, executed in November, 1910, ran from its northeast corner due west 1055 feet to a stake marked by a sweetgum tree 14 inches in diameter, which has now rotted down, which point is 178 feet south of the old northwest fence corner of the John Loyd land, as the fence stood upon the ground in the year 1931? Answer yes or no."

The answer was "Yes." The issue assumed the location on the ground of the northeast corner, which, as already shown, was a disputed fact not determined by any properly submitted issue. It also assumed that a point 1055 feet west of the assumed northeast corner was marked by a sweetgum tree 14 inches in diameter, then rotted down. It is uncertain whether the jury was thereby asked to find whether said point is "178 feet south of the old northwest fence corner of the John Loyd land as the fence stood upon the ground in 1931," or whether the jury was told that such was the fact to enable them to say whether the corner inquired about was "due west 1055.0 feet" from the assumed northeast corner. In either case, the issue was subject to objections made.

■ Special issue No. 3 was: "Do you find, from a preponderance of the evidence, that in the year 1910 the northeast corner of the L.B. Outlaw Survey, which was known as the square Outlaw Survey, was located on the ground at a point which was marked by a 24 inch post oak bearing south 5 degrees west 6 varas, and which point

was 2115.4 varas north of the southeast corner of said L.B. Outlaw Survey, as witnessed by the fence corner at the southeast corner of the Clayton tract? Answer yes or no."

The answer was "Yes." No such issue was pleaded. No pleading tendered an issue as to the location of the northeast or the southeast corner of the Outlaw Survey. The finding called for by the terms of the issue was of inconclusive evidentiary facts. The issue was subject to at least some of the objections made to its submission.

■ We are of the opinion that it was not error to exclude from evidence the deeds affecting the Hughey lands executed subsequently to the conveyance of the 25-acre tract to John Loyd, in 1910. None of the parties were parties, or privies, to the said deeds. Recitals in said deeds must, we think, be regarded as hearsay, not within any recognized exception to the general rule. It is true, as said in Texas Jurisprudence: "Recitals in ancient deeds, more than thirty years old, are admissible, as evidence of general reputation upon the location of boundaries, when the instruments come from the proper source, although neither party claims under them." 7 Tex.Jur. 245, sec. 84.

But the deeds in question were not ancient instruments. By the same authority, it is also said: "While statements of an adjoining land owner are not admissible upon the question of boundaries where none of the parties to the action claims through him and he is not interested in the case, the declarations of disinterested persons, since deceased, who were in a position to know a boundary, are admissible in a controversy about such line * * *." 7 Tex.Jur. 240, sec. 80. This exception to the rule cannot apply, since there was no effort to show that the parties to the deeds were dead, or other facts rendering the statements of deceased persons admissible.

■ . The next question is whether Irene Loyd, who as plaintiff, sued as an individual claiming an undivided one half interest in the land as the community property of herself and John Loyd, and also as guardian for certain of her minor children, claiming undivided interests in the other one half interest, was incompetent to testify to transactions with, or statements by said John Loyd, under the provisions of R.S.1925, Art. 3716. The court admitted the testimony, attempting to limit it to

the interest of Irene Loyd, individually. Appellant contends the testimony was incompetent for any purpose. This presents a question which, under the decisions, we have found to be one of no little difficulty. The admissibility of the testimony, limited as it was to the interest of Irene Loyd, individually, seems to be supported by certain decisions, including the following: Field v. Field, 39 Tex.Civ.App. 1, 87 S.W. 726; Evans v. Scott, Tex.Civ.App., 97 S. W. 116; Harris v. Warlick, Tex.Civ.App., 42 S.W. 356; Wilmurth v. Tompkins, 22 Tex.Civ.App. 87, 53 S.W. 833; Blair v. Breeding, 57 Tex.Civ.App. 147, 121 S.W. 869; Lewis Bros. v. Johnson, Tex.Civ.App., 247 S.W. 589. But we are unable to distinguish the case from Spencer v. Schell, 107 Tex. 44, 173 S.W. 867. In that case, Bessie Schell brought suit as heir of her deceased husband and also in her individual right as the community survivor "not, however, as a qualified community administratrix". The suit was to recover on notes and foreclose a lien on land. One defense was that the notes had been paid to the deceased husband. Edwin C. Spencer, a comaker of the notes, was a party to the suit. His testimony, recognized as concerning a transaction with the deceased, was offered to prove payment. The court said:

"As a party plaintiff in her own right, the testimony was admissible against her [Mrs. Bessie Schell]. As against her in the capacity of the heir of her husband, it was inadmissible under the statute. If the suit were one for the recovery of distinct and severable interests, so that the testimony could be limited and applied to the interest against which it was properly admissible, as, for illustration, where one sues in his own right and is joined by heirs, each seeking the recovery of a separate interest, the question would not be one of difficulty. The rule announced in Harris v. Warlick (Tex.Civ.App.) 42 S.W. 356; Field v. Field, 39 Tex.Civ.App. 1, 87 S.W. 726; Evans v. Scott (Tex.Civ.App.) 97 S. W. 116, and cases of like character, would then apply. But here the interests upon which the recovery is sought [i. e., interest in the notes and lien, undoubtedly one half in the plaintiff as owner in her own right and one half in her as heir of her husband] *are not severable. They are joined in the same person, and the right to their enforcement constitutes an indivisible cause of action.* It would be impossible, for instance, as a practical proposition, to limit the effect of this testimony simply to the interest in these notes of Mrs. Schell as the community survivor. It was not proposed to be shown by the proffered testimony that the payments to which it related were made to Wallace Schell otherwise than upon the notes generally. There could be accordingly, no warrant for applying them solely to either Mrs. Schell's community interest or her inherited interest. *From its nature, the testimony would necessarily affect both interests, and its effect is incapable of limitation.* * * *

"The test furnished by its provisions [present Art. 3716] embraces not alone the *capacity of the parties,* but equally *the effect of the judgment of which the suit admits.* If the suit be one by or against an heir in which '*judgment may be rendered for or against him as such,*' the statute applies. [Italics the court's.] In determining the scope of its operation, it is evident from its language that *no account is to be taken that the judgment may operate for or against the heir in some other capacity.* That the judgment may so operate is not by statute recognized as the test of its application. But what it constitutes as the test and inquiry is: *May such a judgment be rendered as will operate for or against him in the capacity of an heir?* If so, unless called by him, the adverse party is rendered an incompetent witness as to transactions with or statements by the decedent." (Italics ours, except as noted.)

Is said opinion properly to be interpreted as holding that if an heir (or executor, administrator, guardian, or other legal representative of a decedent) is a party to a suit, in which judgment may be rendered for or against him as such, then, even though he be also a party in a different capacity, as to which, standing alone, the statute would not apply, his testimony is, nevertheless, wholly incompetent? In other words, was the case distinguished from Blair v. Breeding, supra, based alone upon the fact that Mrs. Breeding did not sue in a dual capacity, as, for instance, individually and as guardian for her minor child? No other basis of distinction seems to be suggested. But, if such was the ground of distinction, what was the principle governing the recognized distinction between Spencer v. Schell and Field v. Field, supra? In the last case, plaintiff, Mrs. Field, brought suit in her own behalf and as guardian of her insane husband, P. B. Field—a dual capacity—against

Mrs. Mattie Brecheen and her child to recover title and possession of 103 acres of land. The defendants disclaimed, except as to 88 acres, which they claimed by parol gift from P. B. Field to John Field, the deceased former husband of Mrs. Brecheen and father of the minor child. This 88 acres they, by cross-action, sought to recover. Mrs. Brecheen was permitted to testify that John Field, her deceased former husband, always claimed the land in controversy. This was objected to upon the ground, among others, that "it comes within the prohibition of the statute prohibiting a witness to testify to a transaction between a guardian and heir." The court said: "The objection * * * may be disposed of with the suggestion that this is not solely an action between guardian and heir, but is in part an action by Mrs. Field in her individual right, as well as in her official capacity as guardian. Mrs. Brecheen (formerly Mrs. John Field) was not asserting any right as the heir of her deceased husband to the property in controversy, and the statute could not apply to her." [87 S.W. 728.]

If Mrs. Field, because of the dual capacity—one of them being guardian—was incompetent to testify, then, of course, Mrs. Brecheen, the opposite party would be incompetent. How, then, can the case be distinguished in principle from Spencer v. Schell, supra? Certainly not on the same principle as Blair v. Breeding apparently was. The conclusion seems inescapable that either the Supreme Court in Spencer v. Schell mistakenly assumed that Field v. Field was distinguishable on the same principle as Blair v. Breeding, or else the real principle of distinction in all the cases was something entirely different. It is assumed there could be no distinction based upon the differences between a suit to recover land and one to recover upon notes and foreclose the lien. No reason suggests itself why a surviving wife suing in a dual capacity to recover community land, one such capacity being as owner in her own right of an undivided one half interest in the land, would occupy any different relation to the statute than would be the case if she were suing in a dual capacity to recover upon a note, in one capacity claiming in her own right as owner of a one half interest in such note.

In Spencer v. Schell, this test was declared: "May such a judgment be rendered as will operate for or against him in the capacity of an heir? If so, unless called by him, the adverse party is rendered an incompetent witness as to transactions with or statements by decedent." There could, of course, be no distinction between an "heir" and a guardian, both being included alike by the statute. Hence, we take it the test may just as truly be said to be: May such a judgment be rendered as will operate for or against him (here Irene Loyd) as a guardian? Such a test will just as surely disqualify Irene Loyd, even as relating to her individual interest, as it was held to do so in Spencer v. Schell even as relating to a like individual interest. It is in the light of these considerations that we must seek the meaning of the statement in Spencer v. Schell, namely: "If the suit were one for the recovery of distinct and severable interests, so that the testimony could be limited and applied to the interest against which it was properly admissible, as, for illustration, where one sues in his own right and is joined by heirs, each seeking the recovery of a separate interest, the question would not be one of difficulty." If that statement does not mean that the one suing in his own right to which the statute is not applicable, may not sue also in any other capacity, to which the statute does apply, without extending the disqualification to him in all capacities, then we are unable to understand what it does mean. But, as already shown, if that be the meaning there was no valid basis for distinguishing Field v. Field. Even as to the other cases distinguished, we are wholly unable to see why for instance, as applied to the instant case, if Irene Loyd sues for her one half interest in the land in her own right and for another and different interest in the land as guardian, there would be any more difficulty in limiting the testimony to her individual interest, and excluding it as to the other, than would be the case, if she were suing only in her own right and the minors were suing by some other person as next friend or guardian. If the testimony as to the transactions with the deceased should be of a character, the effect of which either alone or in combination with other competent evidence, was to control the issue, why could not judgment be given for Irene Loyd for an undivided one half interest in the land and against her as guardian as to the interest claimed by the minors, just the same as if the minor heirs were suing by some other person as their guardian?

The practical difficulty mentioned of limiting the "effect" of the evidence, so far as we can see, would be precisely the same in either case.

In our opinion, the decision in Spencer v. Schell, in so far as it recognized a distinction between it and the cases mentioned as distinguished, based upon the principle it apparently was, should be regarded as of the nature of a dictum not to be given controlling effect as authority for distinguishing the instant case. In this case neither Irene Loyd who sues to establish title to an undivided one half interest in 3.07 acres of land in her individual right, nor Irene Loyd who as guardian sues for other undivided interests for the heirs, can recover anything, unless it is shown that the land actually exists outside the boundaries of a certain 25-acre tract. If that fact can be established there can be no question as to what interest .in the land is owned by Irene Loyd, individually, nor what interest is owned by the minors as heirs. The fact of the separate existence of the 3.07 acre tract from the 25 acre tract is a fact·common to both claims, and· alike conclusive. If admission of the evidence in question results in establishing the separate existence of the 3.07 acre tract as to Irene Loyd, it also results in establishing her title to an undivided one half interest therein. The limitation of the evidence so as not to apply to the interests of the minors for whom Irene Loyd sues as their guardian may result in failure to establish the separate existence of the 3.07 acre tract as to said wards and consequent failure to establish their title to any interest in the land. Paradoxically, Irene Loyd may recover an undivided one half interest. in the land because she shows that the land has a separate existence from the 25 acre tract; but as guardian she fails to recover any interest only because she fails to prove that the land has any such separate existence. Now, we think· the land either has a separate existence or it has not. If it has a separate existence, the minors have an interest in it. If it has no separate existence, then Irene Loyd has no interest in it. This, we think, presents a situation such as that concerning which Justice Phillips in Spencer v. Schell said: "It would be impossible * * * as a practical proposition, to limit the effect of this testimony simply to the interest in these notes of Mrs. Schell as the community survivor." For other authorities,

which to our minds, point to the real principle involved in the decision in Spencer v. Schell, see Caulk v. Anderson, 120 Tex. 253, 37 S.W.2d 1008; Colvard.v. Goodwin, Tex.Civ.App., 24 S.W.2d 786; Graves v. Moon, Tex.Civ.App., 92 S.W.2d 290; McKibban v. Scott, Tex.Sup., 114 S.W.2d 213, 115 A.L.R. 1421. In Colvard v. Goodwin, supra, the otherwise severable interests, concerning which this same question arose, required, in common, the cancellation of a certain deed, just as in this case, they require the establishment of the separate existence of the 3.07 acre tract of land, as a prerequisite to any recovery in any capacity. This court by Chief Justice Hickman held that the evidence could not be limited since the deed could not be canceled as to one party and not as to another.

Upon the question of waiver of the error in the admission of said testimony because the witness was cross-examined by appellant, it is our conclusion that the error was not waived. It is not shown that by the cross-examination appellant made the witness its own or extended the inquiry beyond the·scope of the direct examination by which the testimony was elicited. It is, we think, stating the rule too broadly to say that if the court, over objection, admits evidence, incompetent under Art. 3716, the other party must forego all cross-examination, upon penalty of a waiver of such error. "If the cross-examination is made only after direct testimony has been admitted over objection as to the personal transaction, no new matters being gone into, it has been held that a waiver cannot be implied * * *." 28 R.C.L. 516, sec. 103. Although it is admitted in the text that there is authority to the contrary, the rule as above stated, appeals to us as more cognizant with familiar legal principles. Corpus Juris, upon this point, says: That a party does not "waive the incompetency by cross-examining the witness about matters as to which he has testified on direct examination where the party objects to the competency of the witness and his objection is not sustained." 70 C. J. 373, sec. 490. By the same authority it is said: "* * * a cross-examination eliciting a repetition of the testimony in much more detail or going beyond the scope of the direct examination and eliciting new matter, as to which the witness is also incompetent is a waiver of the objection to his competency." Id. In a comprehensive note in 64 A.L.R. 1161, it is recognized as

a general rule that a cross-examination of a party upon the matters regarding which under statutes similar to ours he is disqualified, will waive the objection, further states as an exception to that rule, or, as a condition upon which the rule does not apply, that: "Where the cross-examining party objects to the testimony of a witness on direct examination with reference to a transaction or conversation with a deceased party, and such testimony is admitted over his objection, the cross-examination of such witness as to matters brought out on the direct examination does not constitute a waiver of the incompetency of a witness."

For the several reasons discussed, it is our conclusion that the judgment must be reversed and the cause remanded, which is accordingly so ordered.