**W. A. McCAY and wife, Dixie McCay, Appellants,**

v.

**Betty BROWN and James Fritts, Appellees.**

**No. 5124.**

Court of Civil Appeals of Texas, Waco.

July 6, 1972.

Rehearing Denied Aug. 3, 1972.

Wilson F. Walters, Denison, for appellants.

Kennedy & Minshew, Robert G. Bush, Sherman, for appellees.

## OPINION

JAMES, Justice.

This is a consolidated cause which originated in two separate suits, each of which were filed in the 15th District Court of Grayson County, Texas. W. A. McCay filed the first suit December 14, 1970, being against his stepson Windle Ray Brown and his wife (at that time) Betty Brown, for a money judgment in the amount of $30,500.00 together with attorney's fees and costs, and foreclosure of a chattel mortgage on certain fixtures, equip-

ment, and leasehold interest on the "Discotheque Club", a night club. This suit is hereinafter called "the McCay suit". McCay alleged that Brown had executed a $25,000.00 note to him (McCay) in return for moneys McCay had loaned him, secured by the chattel mortgage (also executed by Brown); and in addition thereto, McCay had loaned Brown an additional $5,500.00 which was unsecured. Brown and his wife had owned and operated the Club, and McCay contends that this money was loaned to the Browns primarily to help them pay the Club's bills and debts.

Brown filed a confession of judgment in the cause; however, Mrs. Brown filed an answer in which she specially denied owing McCay any money and denying that McCay had any type of mortgage or lien on the Club's assets, and also pleaded fraud between McCay and Brown (against herself) regarding the note and chattel mortgage asserted by McCay. Mrs. Brown had sued her husband for divorce the same day McCay filed the above-mentioned suit against the Browns.

The Browns separated in August, 1970, at which time McCay contends Brown came to him and turned the Club over to him (McCay) saying, "I can't pay the debts, take it, do what you want to with it, I don't want it anymore."

McCay operated the Club until December 31, 1970, when he and Brown together closed a deal in a lawyer's office selling the Club and all its assets to one Hembree for $30,000.00. Hembree paid $12,000.00 in cash money, and the contract of sale recited that the remaining $18,000.00 was evidenced by a note in said amount bearing 5% interest payable $500.00 per month of principal and interest. McCay and his wife signed the contract as sellers and Hembree as purchaser; however, the $12,000.00 cash was paid to Brown. Brown told Hembree that he (Brown) couldn't have anything in his name on account of the trouble he was having with

his wife, and that was the reason why "McCay was taking care of the deal for him". Appellee Fritts had put up $6,000.00 of the $12,000.00 cash down payment, and Fritts and Hembree had an understanding between themselves that they would be fifty-fifty partners in the Club. However, a few months later, in August, 1971, Hembree assigned all his interest in the Club to Fritts, who closed the Club a few days before trial.

Meanwhile on February 3, 1971, a judgment of divorce was entered by the 15th District Court of Grayson County, Texas, between Brown and his wife in which Mrs. Brown was awarded, among other things, a one-half net community interest in the Discotheque Club.

Then on March 16, 1971, Betty Brown filed a separate suit against McCay and his wife Dixie McCay, Hembree and Fritts, asserting her undivided one-half interest in the Club, that the Club was the business homestead of herself and her former husband Windle Ray Brown, and further alleging that the purported sale of the Club to Hembree and Fritts was without her knowledge or consent and in fraud of her rights. She prayed for cancellation of the sale, and for exemplary damages; and in the alternative, that should the sale of the Club be held valid that she recover one-half of all the purchase money theretofore paid or hereafter to be paid by Hembree and Fritts. This suit is hereinafter called "the Brown suit".

Fritts filed a third party action in the Brown suit against Betty Brown and the McCays, alleging in effect that he (Fritts) and Hembree had purchased the Club in good faith from Mr. and Mrs. McCay, believing the McCays to be the owners thereof, and pursuant thereto he and Hembree had paid the McCays $15,750.00 on the purchase price of the Club, and that Hembree has assigned all his interest in the Club to him, Fritts. He sues to have his title in the Club quieted; or in the alterna-

tive, in the event Betty Brown is successful, that he recover his $15,750.00 purchase money from the McCays.

The trial court consolidated the McCay suit with the Brown suit, over the objection of Appellants McCays.

Trial was had to a jury, which found:

(1) That the Club was the business homestead of Mr. and Mrs. Brown;

(2) That McCay and Brown acted together in the making of the $25,000.00 note and mortgage to commit a fraud on Betty Brown;

(3) That prior to receiving the $12,000.00 cash and the $18,000.00 note from Hembree, McCay acting through Brown represented to Hembree that McCay was the owner of all the assets of the Club;

(4) That such representation was false;

(5) That Hembree relied upon such representation; and

(6) That Hembree had a right to rely on such representation.

Pursuant to the jury verdict, the trial court entered judgment: setting aside as fraudulent the sale by the McCays of the Club to Hembree; awarding title and possession of the Club to Betty Brown; declaring the Club to be the business homestead of the Browns until their divorce (on February 3, 1971); granting Fritts a judgment against the McCays for $15,750.00 and interest; granting the McCays a "take nothing" judgment against the Browns; and adjudicating the costs.

Appellants, the McCays, filed a Motion for Judgment notwithstanding the verdict prior to entry of the trial court's judgment, which was overruled. Appellants did not file a motion for new trial, and now assert that the trial court erred on nine points of error as follows:

(1) In refusing to give the McCay suit a prior setting ahead of the Brown suit;

(2) In consolidating the McCay suit with the Brown suit;

(3) In the trial court's refusal to disqualify himself in the controversy (on the ground that the judge was biased in favor of Mrs. Brown as a result of the Brown divorce suit);

(4) In failing to render judgment for the McCays as a matter of law;

(5) In permitting Fritts to enter the case as a third-party plaintiff;

(6) In overruling eleven special exceptions filed by the McCays;

(7) In overruling McCay's motion for judgment notwithstanding the verdict;

(8) In rendering a "conflicting and irreconcilable and incompatible judgment in two causes at the same time"; and

(8A) In submitting Special Issue No. 2 to the jury.

■ Since Appellants did not file a motion for new trial, we are without jurisdiction to consider any of Appellants' points except four and seven, these latter two points dealing with the trial court's overruling of Appellants' motion for judgment notwithstanding the verdict. There being no fundamental error apparent in the record all other points are waived by Appellants under the provisions of Rules 320, 321, 322, 324, 325, and 374, Texas Rules of Civil Procedure. Wagner v. Foster (1960) 161 Tex. 333, 341 S.W.2d 887; Miller v. Miller (San Antonio CA 1954) 274 S.W.2d 762, error refused. Appellants' points 1, 2, 3, 5, 6, 8 and 8A are therefore overruled.

Under the provisions of Rule 324, TRCP, as now constituted, however, we are authorized to consider Appellants' points four and seven, both in effect complaining of the trial court's overruling of Appellants' motion for judgment notwithstanding the verdict. Appellants, the McCays, contend that they are entitled to

judgment as a matter of law in their favor for the following reasons:

(1) Against Betty Brown, because Betty Brown did not file a sworn pleading denying the execution by herself or by her authority of the $25,000.00 note and chattel mortgage (which were signed by Mr. Brown to McCay), as provided by subsection (h) of Rule 93 TRCP. Also because she did not file a sworn pleading to the effect that the $25,000.00 note and chattel mortgage were unsupported by consideration, as provided by subsection (j) of Rule 93. It is true that Rule 93(h) as applied to the case at bar would and did cause the $25,000.00 note and chattel mortgage to be admitted into evidence as fully proved, and these instruments were admitted into evidence by the trial court. However, we must not overlook the fact that Betty Brown pleaded fraud against McCay by way of defense in the McCay suit, and further pleaded fraud as a plaintiff against McCay in the Brown suit, and there is no requirement in the law that a pleading setting up fraud be verified. 46 Tex.Jur.2d, "Pleading", paragraph 250, page 134. It has been held that where the ground of defense relied on is fraud inducing a contract, the plea need not be verified merely because there is consequential failure of consideration. Colvard v. Goodwin (Eastland CA 1930) 24 S.W.2d 786, error dismissed, opinion by Mr. Justice Hickman. The rule announced in *Colvard* as applied to the case at bar eliminates Appellants' objection to Mrs. Brown's failure to file verified pleadings setting up want of consideration. The jury found that McCay and Brown perpetrated a fraud upon Mrs. Betty Brown, which finding is amply supported by evidence.

(2) Appellants, the McCays, further argue in their brief (although they have no specific point to this effect) that the judgment in favor of Fritts against the McCays for the $15,750.00 cannot stand because there is no evidence to support the jury's finding of fraud on the part of McCay regarding the sale of the Club to

Hembree. We have carefully reviewed the entire record, and suffice it to say that the jury findings to the effect that McCay was guilty of fraud toward Hembree have substantial support in the evidence. The purpose of a motion for judgment notwithstanding the verdict is to enable the trial court to render judgment where a directed verdict would have been proper. Rule 301, TRCP. In the case at bar, in passing upon the propriety of a motion for judgment non obstante veredicto, we are obliged to accept the evidence and the inferences therefrom which support the jury's findings and to disregard contrary evidence and inferences. Triangle Motors of Dallas v. Richmond (1953) 152 Tex. 354, 258 S.W.2d 60; Anderson v. Moore (Sup.Ct. 1969) 448 S.W.2d 105. Since there is ample evidence in the record to support the jury's findings that Appellant W. A. McCay was guilty of fraud as found by the jury's answers to Special Issues 2 through 6 inclusive, we must overrule Appellants' forth and seventh points.

All of Appellants' points of error having been overruled, judgment of the trial court is affirmed.

Affirmed.